McKinney, J.
delivered the opinion of the Court.
At the June Term, 1858, of the Circuit Court of Warren, a presentment was made against the defendant hy the Grand Jury, in which it is charged, in substance, that, on the 25th day of March, 1858, being the Sabbath day, in said county, a certain negro slave, the property of John H. Hopkins,, did retail spirituous liquors to him, the said George Bonner; he, the said George Bonner, then and there aiding, promoting, and encouraging the said retailing, as aforesaid.
The Court, on motion of the defendant, quashed the presentment, and the Attorney General appealed.
Passing by objections to the form of the presentment, we proceed to inquire whether it substantially charges the defendant with any act indictable by our law. This is a new question, hut we think it presents no serious difficulty.
If the acts charged had taken place since the new Code went into operation, the question would admit of no discussion. By section 2617 of the Code, slaves are absolutely forbidden to sell any spirituous liquors; and hy sections 2672, 2673, it is made an indictable offence to purchase or receive from a slave any article, unless it be of the slave’s own manufacture, without a written permit from the master, specifying the time when and the article to be sold.
To purchase or receive spirituous liquors from a slave would, clearly, fall within the prohibition and penalty of the latter section. And it may be observed, that, as slaves are positively disqualified to sell spirituous liquors by the section first referred to, a “permit” from the *137 master to do so would be a nullity, and, of course, no defence to the person who may have purchased or received the liquor from the slave.
It remains to be seen whether the acts imputed to the defendant amount to an indictable offence, upon general principles of the common law, prior to the adoption of the Code.
In the case of a white man, we suppose it cannot be seriously controverted, that, upon general principles, the purchaser of spirituous liquors, in violation of the statutes passed to suppress tippling, is as much guilty of a violation of the law, and as much amenable to criminal prosecution and punishment, as the seller. They are, in all respects, partieeps criminis; they are alike wilful violators of the law. The express prohibition to sell, upon every just principle of construction, must be considered as implying a prohibition to purchase. The purchaser — whether we regard his intent, or the effect and consequences of his act — is no less guilty, no less within the mischief intended to be suppressed, than the seller. It matters not that the former is not placed under the obligation of a bond or oath. This takes nothing from the force of the argument. He still stands guilty of wilfully participating in, and aiding and encouraging the commission of a criminal offence. Does not this, upon the soundest principles of criminal law,, constitute him a principal in the offence? We think it does. And, perhaps, it would scarcely be going too far to say, that he ought to be regarded -as less excusable than the seller. He has not' the poor pretext of the latter, that the forbidden traffic is, in part, his means of procuring a living.
*138 If this conclusion be correct, as between citizen and citizen, is it not equally an indictable offence for a white man to purchase liquor from a slave ? We think it is, with the qualification that it is, perhaps, a more aggravated, and, if possible, more mischievous wrong.
By the act of 1829, ch. 74, § 1, slaves are forbidden to sell spirituous liquors, (under the penalty of a limited number of stripes to he inflicted by order of a justice,) unless hv the permission of the master. But the act of 1835, ch. 57, § 2, contains a prohibition upon the master to permit a slave to sell spirituous liquors. By these provisions, taken together, the sale of liquor by a slave is a criminal offence, absolutely prohibited, under corporal punishment. If so, is not a white man, who tempts the slave to commit an offence, and aids, abets and encourages him in doing so, as much guilty of a misdemeanor as a principal offender, as if the seller had been of his own color ? The complexion and social condition of the slave does not enter into the gist of the offence; nor is it of any consequence, as we shall see presently, that the mode of prosecution and kind of punishment, in the case of the white man, are different from that prescribed for the slave.
It is well settled that a white man may be either an accessory, or principal, in a homicide committed by a slave, in like manner as if the crime had been committed by a white man. State v. McCarn, 11 Hum., 494. In that case it is said the offence is the same, though the punishment is different. That case proceeds upon the doctrine, that the Courts, to prevent a failure of justice and to secure the punishment of offenders, will so modify the rules and principles of the common law, *139 as to adapt them to new offences created by statute, or to new cases as they arise. Hence, if a new felony be created, or if an act which, at common law, was only a misdemeanor, be made a felony, the rules and principles of the common law, as to principals and accessories, and in other necessary respects, will be applied to the new felonies, though the statute creating the felonies be silent on the subject. So, in McCarn’s case it was held, that, although by the penal Code of 1829, principals and accessories are to be punished in like manner: yet, as under our law, white men and slaves are punished differently ; a white man, convicted as accessory to a crime committed by a slave, must be punished in the same manner as if the principal had been a white man; and the slave, convicted as principal, must be punished as prescribed by the statute in such cases.
If the doctrine of McCarn’s case be sound in respect to felonies, surely it is no less applicable to cases of misdemeanors. And if so, the principle of the case, in our opinion, warrants the conclusion, that the defendant in the case before us is liable to be prosecuted and punished in the same manner as if the offence charged upon the slave had been committed by a white man.
It follows that the judgment must be reversed, and the defendant be held to answer to the presentment.